UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEO SCOTT, JR.

CIVIL ACTION

VERSUS

NUMBER 13-741-SDD-EWD

E.I. DU PONT DE NEMOURS
AND COMPANY

### RULING ON MOTION FOR LEAVE TO FILE ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT AND FIRST AMENDED COMPLAINT

Before the court is Defendant's, E.I. du Pont de Nemours and Company's ("Defendant"), Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint.[1]  The motion is opposed[2] and Defendant has filed a reply.[3]  For the reasons set forth herein, Defendant's Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART.**

### I.      Background

Plaintiff, Leo Scott, Jr. ("Plaintiff"), alleges that while working as an operator at Defendant's Burnside plant, he was exposed to sulfur dioxide ($SO_2$) and sulfur trioxide ($SO_3$) gases which were leaking from equipment.  At the time of his alleged exposure, a separate *qui tam* action had been filed against Defendant for failing to report the gas leaks as allegedly required under the Toxic Substances Control Act ("TSCA").  *United States of American et al, Jeffery M. Simoneaux,*

---

[1] R. Doc. 88.

[2] R. Doc. 104.

[3] R. Doc. 115.

*Relator v. E.I. du Pont de Nemours and Company*, 12-cv-219-SDD-SCR, United States District Court, Middle District of Louisiana (the "*Qui Tam* Action").

On November 11, 2013, Plaintiff, filed his Complaint in the instant action for retaliation under the Federal False Claims Act ("FCA").[4]  Plaintiff alleges that as a result of providing factual information and deposition testimony for the *Qui Tam* Action concerning his exposure at the Burnside facility, Defendant retaliated against him through various forms of harassment and disciplinary actions.  Plaintiff alleges he was wrongfully placed on probation on November 1, 2012[5] and was terminated on April 1, 2013.[6]   On December 13, 2013, Plaintiff filed an Amended Complaint.[7]  Thereafter, Defendant filed a Motion to Dismiss, which was denied on April 29, 2014.[8]  Pursuant to Federal Rule of Civil Procedure, Defendant's answer was due 14 days following denial of its Motion to Dismiss.  Fed. R. Civ. P. 12(a)(4)(B).  Defendant did not timely file an answer.

Counsel for Defendant candidly admits that focus on the related *Qui Tam* Action resulted in the failure to file an answer or affirmative defenses in this suit.[9]  Defendant's Motion for Leave

---

[4] R. Doc. 1.  In addition to the instant suit, Plaintiff also filed a Complaint against Defendant on June 25, 2014 alleging discrimination based on race in violation of 42 USC § 2000e-2(a) and retaliation in violation of 42 USC § 2000e-3(a). *Leo Scott, Jr. v. E.I. du Pont de Nemours and Company*, 14-cv-391-JWD-EWD, United States District Court, Middle District of Louisiana (the "Race Discrimination Suit").  The Race Discrimination Suit also alleges that Plaintiff was wrongfully placed on probation on November 1, 2012 and was wrongfully terminated on April 1, 2013.  *See*, Race Discrimination Suit, R. Doc. 1, ¶¶ 55 & 63.  Plaintiff subsequently amended his Race Discrimination Suit to allege violations of the Americans with Disabilities Act ("ADA"), claiming that "Defendant failed to reasonably accommodate Plaintiff's known disability (to the extent accommodation was required) although the accommodation would not have created an undue hardship for Defendant.")  Race Discrimination Suit, R. Doc. 20, ¶ 101.

[5] R. Doc. 1, ¶ 26.

[6] R. Doc. 1, ¶ 38.

[7] R. Doc. 6.

[8] R. Doc. 31.

[9] R. Doc. 88, pp. 1-2.  Defendant explains that "[i]n late April and May 2014, undersigned counsel and Mr. Scott's counsel here were involved in preparing and exchanging expert reports in the *Simoneaux qui tam* case.  (3:12-cv-00219)  Apparently with focus on that case, and not to the deadline triggered by the Court's ruling, undersigned counsel for DuPont did not file an Answer with Affirmative Defenses in this action."  R. Doc. 88, pp. 1-2.

focuses on its proposed Sixth Affirmative Defense – its purported legitimate, non-discriminatory reason for Plaintiff's termination.  However, the Court notes that Defendant's proposed pleading would also, for the first time, directly respond to each allegation set forth in Plaintiff's Complaint and First Amended Complaint and would assert, in addition to the legitimate, non-discriminatory reason for termination, seven other affirmative defenses.  Plaintiff "objects to any affirmative defenses being alleged at this time" and "especially objects" to Defendant's proposed Third, Sixth, Seventh and Eighth Affirmative Defenses.[10]  Like Defendant, Plaintiff focuses on Defendant's proposed Sixth Affirmative Defense (the asserted legitimate, non-discriminatory reason for termination).

## II.     Law and Analysis

### A.  Standard for Motion to Amend Answer

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading with the opposing party's consent or with leave of court.  "Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (citations and internal quotation marks omitted).  While "[l]eave to amend is in no way automatic," the court "must possess a 'substantial reason' to deny a party's request for leave to amend."  *Marucci Sports, LLC v. National Collegiate Athletic Ass'n*, 751 F. 3d 368, 378 (5th Cir. 2014).  The district court is given discretion to grant or deny a motion to amend and may consider a variety of factors, including undue delay and undue prejudice to the opposing party.  *Id*.

---

[10] R. Doc. 99, pp. 1-2.

### B.  Defendant's Request to Respond to Allegations in the Complaint and First Amended Complaint

Defendant failed to answer the Complaint and First Amended Complaint.  Defendant now seeks to file its Answer and Affirmative Defenses to "complete the pleadings and record…"[11] and asserts that "[u]ndersigned counsel's mistake in not filing the Answer was an inadvertent, unintentional oversight."[12]  Federal Rule of Civil Procedure 8(b)(1)(B) requires a party to admit or deny the allegations in a complaint.  Defendant must fairly respond to the substance of each allegation. Fed. R. Civ. P. 8(b)(2).  Although Plaintiff has filed an objection to Defendant's Motion for Leave, he does not articulate any objection to the filing of Defendant's answer; rather, Plaintiff's objections focus on the late addition of certain affirmative defenses discussed below. Accordingly, because the Court finds that there is no substantial reason to deny Defendant's request to file an answer, and such answer would, as Defendant states, "complete" the pleadings, Defendant's Motion for Leave is GRANTED to the extent Defendant seeks to file its answer to Plaintiff's Complaint and First Amended Complaint.

### C.  Defendant's Request to Allege Affirmative Defenses

Plaintiff objects to "any affirmative defenses being alleged at this time"[13] and "especially objects" to Defendant's proposed Third, Sixth, Seventh, and Eighth Affirmative Defenses.  In Defendant's proposed Third Affirmative Defense, Defendant asserts that "[a]t all times pertinent hereto, DuPont acted reasonably and prudently under the circumstances and complied with all applicable federal and state laws and regulations."[14]  In its proposed Sixth Affirmative Defense, Defendant asserts that "DuPont did not retaliate against Plaintiff because he was engaged in a

---

[11] R. Doc. 88, p. 2.

[12] R. Doc. 88, p. 2.

[13] R. Doc. 99, p. 1.

[14] R. Doc. 88-3, p. 10.

protected activity.    Rather, Plaintiff was separated from DuPont for a legitimate, non-discriminatory, non-retaliatory reasons.    Plaintiff cannot prove that this legitimate, non-discriminatory, non-retaliatory reason was pretextual."[15]   In its proposed Seventh Affirmative Defense, Defendant asserts that "DuPont contends that Plaintiff's retaliation claims must fail if it is determined that the issues presented in the *Qui Tam* action, *Simoneaux v. E.I. du Pont de Nemours and Company*, CA No. 3:12-cv-00219, is not a viable False Claims Act claim, because in that circumstance Mr. Scott could not have been engaging in protected activity."[16]   Finally, in its proposed Eighth Affirmative Defense, Defendant contends that "[t]o the extent that Plaintiff is entitled to back pay, which is denied, DuPont asserts that it is entitled to an offset against Plaintiff's claims for damages for any amounts Plaintiff has earned or should have earned through reasonable diligence."[17]

Under Federal Rule of Civil Procedure 8(c), a party must affirmatively state an affirmative defense in responding to a pleading.   If a defendant fails to raise an affirmative defense in its responsive pleading, it is waived.  Fed. R. Civ. P. 12(b); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).   "However, '[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise…technical failure to comply precisely with Rule 8(c) is not fatal.'" *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).   "An affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"   *Id*.  *See also*, *Burnett v. State Farm Fire and Cas. Co.*, 2010 WL 4627727, at *4 (M.D. La. Nov. 4, 2010) ("However, a defendant does not per se waive its right to

---

[15] R. Doc. 88-3, p. 10.

[16] R. Doc. 88-3, p. 11.

[17] R. Doc. 88-3, p. 11.

plead an affirmative defense by failing to plead the defense in its answer.  Instead, the court may permit the defendant to amend its answer to include the defense if the plaintiff was on notice of the defense within a reasonable time and is not prejudiced by the defendant's failure to include the defense in its answer.") (internal citations omitted).  Courts in this circuit "look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial."  *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).

### 1. Proposed Sixth Affirmative Defense: Legitimate, Non-Discriminatory Reason for Termination

By its proposed Sixth Affirmative Defense, Defendant asserts that it had a legitimate, non-discriminatory and non-retaliatory reason for terminating Plaintiff's employment.[18]  Defendant argues that Plaintiff "cannot realistically claim prejudice" by the filing of the pleading now because Plaintiff has been aware "since his separation from DuPont and through the course of discovery, what DuPont's legitimate, non-discriminatory reason for his termination is."[19]  In response, Plaintiff argues that he "would be unfairly prejudiced in having to respond to alleged legitimate nondiscriminatory reasons for Defendant's actions against Plaintiff, which the Defendant has

---

[18] As a preliminary note, the Court assumes that an employer's legitimate, non-discriminatory and non-retaliatory reasons for the challenged employment action is an affirmative defense to liability that must be pled in Defendant's answer.  *Compare*, *Harville v. Texas A&M University*, 833 F.Supp.2d 645, 658 (S.D. Tex. 2011) ("Because the defendants have offered an affirmative defense by giving legitimate, nondiscriminatory reasons for their contested actions, the burden shifts back to the plaintiff to show evidence that the defendants' explanations were pretextual."); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 ("After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability.") *with  Parada v. Great Plains Intern. Of Sioux City, Inc.*, 483 F.Supp.2d 777, 808 (N.D. Iowa 2007) ("[Plaintiff's] contention that the employer's legitimate, non-discriminatory reasons for its actions is an affirmative defense that must be pleaded and proved by the employer is simply wrong.  An employer is only required *to articulate* or *to produce* a legitimate, non-discriminatory reason for its actions.") (emphasis in original).

[19] R. Doc. 88, pp. 2 & 3.  Plaintiff has also filed a Motion to Strike Defendant's motion for summary judgment based on Defendant's failure to file an answer and affirmative defenses.  R. Doc. 84.

never before raised in an answer or even in the joint status report."[20]   Plaintiff argues that even in its proposed defense, Defendant fails to "articulate" the purported legitimate non-discriminatory reason and therefore the defense is "vague."[21]   Plaintiff also asserts that he "has had no discovery on such assertion" and points out that "discovery has been closed since April 2015."[22]   Plaintiff additionally argues that allowing Defendant to raise the affirmative defense of a legitimate non-discriminatory reason for its employment action now would "create burdens for Plaintiff not previously in the case" under the *McDonnell-Douglas* burden-shifting analysis.[23]

The Court first considers whether Plaintiff would be unfairly surprised by Defendant alleging a legitimate, non-discriminatory, non-retaliatory reason for his termination.   In general, this defense is not novel to actions of this type.   Under the burden-shifting framework of *McDonnell-Douglas*, it is expected that the defendant will produce a legitimate, non-discriminatory reason for employment action after the plaintiff establishes a prima facie case.   *See*, The False Claims Act: Fraud Against the Government § 5:27.   Thus, Plaintiff was on notice of this defense generally by virtue of the nature of this litigation.   More importantly, the Court finds that

---

[20] R. Doc. 99, p. 2.

[21] R. Doc. 99, p. 2.

[22] R. Doc. 99, p. 2.

[23] The parties agree that the burden-shifting analysis set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to Plaintiff's claim.  *See*, R. Doc. 104, p. 3 (Defendant's Opposition to Motion to Strike) ("Plaintiff argues that the burden shifting analysis set forth in *McDonnell Douglas* applies in this case.  DuPont agrees.").  "Under this framework, the plaintiff must make a *prima facie* showing of discrimination.  One the showing is made, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'  The burden then shifts to the plaintiff to show the articulated reason was pretextual."  *Burton v. Freescale Semiconductor, Inc.*, 798 F. 3d 222, 227 (5th Cir. 2015).  The Supreme Court has clarified that under this framework, the establishment of plaintiff's *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff.  *St. Mary's Honor Center v. Hicks*, 509 US 502, 506 (1993). "Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case – *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'….It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Id.*  (internal citations omitted).

Plaintiff was put on notice of the specific factual context of Defendant's asserted legitimate, non-discriminatory reason for his termination.  As pointed out by Defendant, it asserted in support of its Motion to Dismiss that "[o]n March 27, 2013, Plaintiff was once again informed that DuPont 'did not have a position…that would accommodate his light duty medical restriction' and was subsequently terminated because he was unable to perform his job…."[24]  Further, it appears that Plaintiff has engaged in at least some discovery relevant to the proposed affirmative defense in both this case[25] and in his related Race Discrimination Suit.[26]  Such previous discovery efforts lead this Court to find that Plaintiff knew that evidence regarding Plaintiff's disability and Defendant's ability to accommodate same was potentially relevant in this suit and therefore Plaintiff would not be "unfairly surprised" by Defendant's proposed Sixth Affirmative Defense.[27]

The Court next considers whether Plaintiff would be prejudiced by insufficient time to respond if Defendant's proposed Sixth Affirmative Defense is allowed.  As noted above, it appears from Plaintiff's own briefing that he has received "very few documents" he considers relevant to this issue.  While Plaintiff complains that discovery has been closed since April 2015 and expresses

---

[24] R. Doc. 21, p. 9.  Likewise, Plaintiff's Complaint alleges that "[o]n March 27, 2013, Mr. Scott's supervisor, Elizabeth Cromwell, and a member of Dupont's Human resources Department, Greta Pfalzgraf, met with Leo Scott and stated that Dupont did not have a position for him that would accommodate his light duty medical restriction."  R. Doc. 1, ¶ 37.

[25] Plaintiff explains that he "previously requested disability information and accommodation information in the instant case as it would have been helpful in addressing Plaintiff's *prima facie* case as to causation" and received "very few documents" from Defendant in response.  Plaintiff asserts that he "did not press the issue in the instant case, but would have had DuPont attempted to shift the burden to Plaintiff to prove disability was a pretextual reason for Scott's termination."  R. Doc. 99, n. 12.

[26] Plaintiff contends that "[p]art of the discovery issues not resolved in the Related Scott Case and at issue in the pending appeal of the Magistrate Judge's ruling in that case is discovery of evidence related to **disability** and DuPont's accommodation of other employees with disabilities."  R. Doc. 99, p. 4 (emphasis in original).  As Plaintiff goes on to explain, "[t]he pending discovery at issue in the Related Scott case is particularly relevant to whether disability was pretextual, as the discovery seeks information related to DuPont's response to other employees with disabilities."  R. Doc. 99, n. 12.

[27] However, in the event Defendant seeks to assert some other purported legitimate, non-discriminatory reason for its employment actions, the Court agrees that Defendant has not articulated such reason during this lawsuit and therefore would be barred from asserting same absent a showing that Plaintiff would not be unfairly surprised or prejudiced.

concern about the upcoming trial date, the Court notes that Defendant recently filed an Ex Parte Motion setting forth the need for additional discovery related to "new evidence"[28] and the April 4, 2016 trial date was recently continued without date.[29]   Accordingly, while the Court GRANTS Defendant leave to amend its pleading to assert the Sixth Affirmative Defense (as it relates to Defendant's inability to accommodate Plaintiff's light duty medical restriction), it will also grant Plaintiff leave to conduct additional discovery for a period of ninety (90) days on the issue of Defendant's asserted legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination.

### 2. Proposed Third Affirmative Defense: Compliance with Laws

Defendant's proposed Third Affirmative Defense provides that "[a]t all times pertinent hereto, DuPont acted reasonably and prudently under the circumstances and complied with all applicable federal and state laws, and regulations."[30]   Plaintiff argues that previous rulings have "suggested that information regarding the merits of whether DuPont was violating laws, including OSHA and TSCA, is not at issue in this case"[31] and asserts that if this affirmative defense is allowed, "Plaintiff should be allowed to re-open discovery and re-urge the discovery issues previously addressed by the Court."[32]   In response, Defendant agrees that "[b]ecause the district court has properly ruled that certain regulatory issues are not relevant to Plaintiff's case, and struck

---

[28] R. Doc. 106-1, p. 2.

[29] R. Doc. 125.

[30] R. Doc. 88-3, p. 10.

[31] R. Doc. 99, p. 5.

[32] R. Doc. 99, p. 6.   Plaintiff points to a prior ruling of this Court denying his motion to compel production of documents provided to OSHA by DuPont during an investigation conducted in 2014 (*i.e.*, after Plaintiff's termination). R. Doc. 62.  This Court found that Plaintiff had not shown that such documents were "relevant to showing that he engaged in protected activity before he was placed on probation in 2012 or terminated in 2013, or to showing that the defendant knew he engaged in protected activity, or to showing that he was placed on probation because of any protected activity."  R. Doc. 62, pp. 4-5.  Plaintiff also points to the district judge's ruling striking three expert witnesses from the *Qui Tam* Action as witnesses in this matter.  R. Doc. 74.

Plaintiff's experts designated to testify on those issues, such evidence would also be inadmissible."[33]  However, Defendant clarifies that its proposed Third Affirmative Defense is meant to ensure Defendant can "argue its theory of the case: that its employment relationship with Scott was conducted lawfully and that it did not retaliate against Scott for engaging in activity protected by the False Claims Act."[34]  Based on Defendant's statement that its proposed Third Affirmative Defense is meant to ensure its ability to argue this theory of the case, the Court finds that such a defense was raised by Defendant in its previous Motion to Dismiss, and therefore should not come as a surprise to Plaintiff.[35]  There, Defendant argued that Plaintiff could not satisfy the *prima facie* elements of his retaliation claim because, *inter alia*, Plaintiff had not alleged facts "that would show he was engaged in protected activity under the FCA" and therefore could not "prove he was retaliated [against] 'because of' his protected activity."[36]  Further, as clarified and limited by Defendant, this affirmative defense is related to Defendant's claim that it terminated Plaintiff for a legitimate, non-discriminatory reason (rather than because he was engaged in protected activity) and is therefore linked to Defendant's proposed Sixth Affirmative Defense. Accordingly, the Court GRANTS Defendant leave to assert its proposed Third Affirmative Defense for the reasons discussed above.  *See*, section (C)(1), *supra*.

### 3. Proposed Seventh Affirmative Defense: Viability of False Claims Act Claim

By its proposed Seventh Affirmative Defense, Defendant asserts that "Plaintiff's retaliation claims must fail if it is determined that the issues presented in the *Qui Tam* action…is not a viable False Claims Act claim, because in that circumstance Mr. Scott could not have been engaging in

---

[33] R. Doc. 121, p. 3.

[34] R. Doc. 121, p. 4.

[35] R. Doc. 7.

[36] R. Doc. 7-1, p. 6.

protected activity."[37]  Plaintiff objects to this proposed affirmative defense, reasoning that this Court rejected similar arguments as set forth in Defendant's Motion to Dismiss and when rejecting certain experts.[38]  Plaintiff further objects to this affirmative defense because "the legal standard applicable to a Plaintiff who has been retaliated against under the False Claims Act does not turn upon future events that have not yet occurred…."[39]  For purposes of Defendant's Motion for Leave, this Court will not consider the merits of this defense.   Instead, this Court considers whether allowing amendment to include this affirmative defense would result in "unfair surprise" or prejudice to Plaintiff.   The Court finds that the issue raised by Defendant's proposed Seventh Affirmative Defense has been previously raised in Defendant's Motion to Dismiss filed in this action.  Accordingly, the Court GRANTS Defendant leave to assert this affirmative defense.

### 4. Proposed Eighth Affirmative Defense: Offset

By its proposed Eighth Affirmative Defense, Defendant asserts that "[t]o the extent that Plaintiff is entitled to back pay, which is denied, DuPont asserts that it is entitled to an offset against Plaintiff's claims for damages for any amounts Plaintiff has earned or should have earned through reasonable diligence."  Plaintiff correctly points out that that in the parties' Joint Status Report, Defendant asserted that it "is not currently claiming any offset."[40]  In response, Plaintiff points out that "Scott has two separate lawsuits pending against DuPont and seeks damages in both.  To the extent that damages are awarded in one case, it may be appropriate for damages for the same type of injury or loss to be offset in the subsequently tried case."[41]

---

[37] R. Doc. 88-3, p. 11.

[38] R. Doc. 99, p. 6.

[39] R. Doc. 99, p. 6.

[40] R. Doc. 99, p. 7; R. Doc. 25, p. 4.

[41] R. Doc. 121, p. 4.

As a threshold matter, taking Defendant at its word that its intention is to assert a defense of offset based on potentially duplicative recovery in Plaintiff's Race Discrimination Suit, Defendant's proposed Eighth Affirmative Defense does not seem tailored to that intention. Instead, the proposed defense is more akin to a mitigation of damages defense in that Defendant argues that Plaintiff earned or should have earned offsetting amounts through reasonable diligence.[42]  However, the Court will assume that Defendant's intent is to assert a defense of offset related to the Race Discrimination Suit.

Plaintiff's Race Discrimination Suit was filed against Defendant on June 25, 2014.  The parties' Joint Status Report was filed on February 27, 2014.[43]  At the time of the parties' Joint Status Report and Defendant's statement that it was not claiming any offset, the Race Discrimination Suit had not been filed.  Under these circumstances, and especially where trial of this matter has been continued without date, to the extent Defendant seeks to insulate itself from "duplicative claims"[44] made after the filing of the Joint Status Report, the Court DENIES Defendant leave to file the proposed Eighth Affirmative Defense but GRANTS Defendant leave to assert an affirmative defense of offset based on potentially duplicative recovery in the Race Discrimination Suit.

---

[42] The Court notes that in the Race Discrimination Suit, Defendant has filed a similar Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint.  Race Discrimination Suit, R. Doc. 74.  There, Defendant proposed the following affirmative defense: "To the extent Plaintiff seeks a monetary award for a category of damages also claimed in Civil Action No. 13-741, DuPont may be entitled to an offset of damages in order to avoid duplicate recovery by Plaintiff."

[43] R. Doc. 25.

[44] R. Doc. 121, p. 4.

### 5. The Remaining Affirmative Defenses

As noted above, in addition to the proposed affirmative defenses to which Plaintiff "especially objects,"[45] Defendant's proposed pleading asserts four other additional proposed affirmative defenses.[46]  Although Plaintiff generally objects to the assertion of any affirmative defenses at this time, the Court considers the remaining affirmative defenses to be such that Plaintiff cannot claim unfair surprise or prejudice.  For example, Defendant's proposed Fourth and Fifth Affirmative Defenses relate to Plaintiff's engagement in activity protected by the FCA and Defendant's knowledge thereof.  These issues were raised in Defendant's Motion to Dismiss.[47]  Defendant's proposed First and Second Affirmative Defenses assert Plaintiff's own fault or the fault of those other than Defendant and Plaintiff's failure to mitigate damages.  Plaintiff has not raised any particularized objections to these defenses.  In light of the fact that trial in this matter has been continued without date, the Court GRANTS Defendant leave to file the additional affirmative defenses.

### III.    Conclusion

For the reasons set forth herein, Defendant's Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.[48]  Defendant is granted leave to file an answer

---

[45] R. Doc. 99, p. 1.

[46] Defendant's proposed First Affirmative Defense provides that "Plaintiff's damages, if any, which are expressly denied, were caused by his own actions, and not by the fault of DuPont or anyone for whom the DuPont (sic) may be responsible, as will be proved at the trial of this matter."  R. Doc. 88-3, p. 10.  Defendant's proposed Second Affirmative Defense states that "Plaintiff failed to mitigate his damages."  R. Doc. 88-3, p. 10.  Defendant's proposed Fourth Affirmative Defense provides that "Plaintiff was not engaged in activity protected by the False Claims Act."  R. Doc. 88-3, p. 10.  Finally, Defendant's proposed Fifth Affirmative Defense states that "DuPont avers that if Plaintiff was engaged in a protected activity, which is specifically denied, DuPont had no knowledge that Plaintiff was engaged in a protected activity."  R. Doc. 88-3, p. 10.

[47] *See*, R. Doc. 7-1.

[48] R. Doc. 88.

to Plaintiff's original Complaint and First Amended Complaint and is granted leave to file its proposed First, Second, Third, Fourth, Fifth, Sixth, and Seventh Affirmative Defenses.  Defendant is denied leave to file the proposed Eighth Affirmative Defense but is granted leave to assert an affirmative defense of offset based on potentially duplicative recovery in the Race Discrimination Suit.  Defendant shall file a comprehensive Answer and Affirmative Defenses comporting with this Ruling within ten (10) days of this Ruling.

Additionally, the Court grants Plaintiff leave to conduct additional discovery for a period of ninety (90) days on the issue of Defendant's asserted legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination.

Signed in Baton Rouge, Louisiana, on April 13, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**